IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DOUGLAS A. HIRANO, ) | Civ. No. 06-00010 ACK/BMK; |
| ) | Cr.  No. 99-00465 ACK |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

ORDER DENYING PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT A SENTENCE

BACKGROUND

I.   Procedural Background

Douglas A. Hirano ("Petitioner") moves this Court to
vacate, set aside, or correct his sentence under 28 U.S.C.
§ 2255.  In an Indictment returned by a federal grand jury on
September 23, 1999, Petitioner was charged with the following six
counts:

(1) knowingly and intentionally manufacturing 50 grams
or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1)
and 841(b)(1)(A);

(2) knowingly and intentionally possessing with the
intent to distribute 50 or more grams of methamphetamine in
violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A);

(3) knowingly and intentionally possessing with the

1

intent to distribute 5 or more grams of a mixture or substance containing cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B);

(4) knowingly and intentionally possessing with the intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C);

(5) knowingly and intentionally possessing methamphetamine in violation of 21 U.S.C. § 844(a); and

(6) knowingly possessing ammunition, having been previously convicted of crimes punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g) and 924(e)(1).

The United States Government ("Respondent") filed an Information and Notice of United States' Intent to Seek Enhanced Penalties under 18 U.S.C. § 924(e) on September 24, 1999.  It also filed a Special Information as to Prior Drug Conviction of Defendant pursuant to 21 U.S.C. § 851.

On April 26, 2001, Hirano pled guilty, without a plea agreement, to all six counts of the Indictment.  In the months following his guilty plea, Hirano filed two sentencing statements and a motion for downward departure that delayed the ultimate sentencing.  The parties also agreed to a stipulation to continue the sentencing date.  The Court sentenced Petitioner to a term of imprisonment of 262 months on February 24, 2003.  Hirano did not

appeal his sentence.

Petitioner filed this Motion to vacate, set aside, or correct his sentence on January 10, 2006.  Respondent filed an Opposition to Petitioner's Motion on February 27, 2006.[1] Petitioner filed a Reply to the Government's Opposition on March 21, 2006.

## II.  **Factual Background**

On September 10, 1999, Douglas Hirano checked into Room 1617 at the Outrigger Waikiki Surf Hotel under the assumed name "Kevin Higashi."  At approximately 5:00 p.m. that evening, a hotel maintenance worker responded to a smoke detector alarm activation in Room 1617.  The maintenance worker observed smoke emanating from beneath the door of Room 1617.  He knocked on the door and attempted to access the room.  The hotel employee was unable to access the room because the outer door was dead bolted. Without opening the door, Hirano informed the worker that everything was under control and that the employee should leave.

Soon, hotel security personnel arrived at the door and persuaded Hirano to open the door.  The security officers

---

[1]  Pursuant to Local Rule 7.10, Respondent had thirty (30) days from service of Petitioner's Motion to file a response.  As a result of a misunderstanding of the local rules, the Government responded over forty-five days after it was served with the petition.  The Court permits the Respondent's delayed filing because of its misinterpretation of Local Rule 7.10.  The Court finds that Petitioner suffered no prejudice as a result of Respondent's failure to comply in a timely fashion with the local rules.

informed Hirano that they had to inspect the room.  Upon entering
the room, the security officers observed a lighter, a coffee pot
containing black particles, and smoke escaping from under the
bathroom door.  Hirano opened the bathroom door in compliance
with the guards' instructions, where they discovered a frying pan
containing a smoking crystalline substance and a crack pipe.
Hirano became agitated and requested the hotel personnel leave
the premises.  In the meantime, Honolulu Police Department
("HPD") officers arrived at the scene. They placed Hirano under
arrest under the suspicion that he was operating a
methamphetamine conversion laboratory.

After obtaining a search warrant, HPD narcotics
investigators searched Room 1617 and seized evidence from the
room.  All potential narcotic substances were analyzed by the HPD
Crime Lab, which concluded that the following quantities of drugs
were present in Room 1617: 111.611 grams of methamphetamine of
untested purity levels below 80%; 659.245 grams of
methamphetamine with purity levels ranging from 84% to 99%
("ice"); 53.913 grams of cocaine; and 8.604 grams of cocaine
base.

Six days later, the resident manager of Kapiolani
Terrace apartment building notified police that he suspected one
of the residents in the building was using his apartment as a
drug lab.  His suspicions were supported by a locksmith and

fellow resident that had smelled chemical odors emanating from or around Apartment 1219.  Hirano had moved into Apartment 1219 on August 21, 1999.  After obtaining a federal search warrant, officers entered Hirano's apartment and searched for evidence. Officers seized two scales, items containing a powdery substance and/or drug residue, and a box containing 43 rounds of Winchester .380 caliber ammunition.  Lab reports indicated that the seized items contained .028 gram of methamphetamine and .003 gram of cocaine.  The Bureau of Alcohol, Tobacco, and Firearms confirmed that the seized ammunition functioned as designed.

On April 27, 2001, Hirano was interviewed in the presence of counsel and admitted that he manufactured methamphetamine, sold cocaine and crack, and possessed ammunition.  Hirano accepted responsibility for his actions and offered an apology.

## III. <u>Sentencing</u>

Based on Hirano's April 26, 2001 guilty plea to Counts 1-6 of the Indictment, the Court sentenced him on February 24, 2003 in accordance with the Presentence Investigation Report and United States Sentencing Guidelines ("U.S.S.G.").  Pursuant to U.S.S.G. § 1B1.11(b)(1), the Court sentenced Hirano in compliance with the sentencing guidelines that were in effect at the time the offenses occurred.

Counts 1 and 2 were grouped together pursuant to

U.S.S.G. § 3D1.2(a).  As Count 1 and 2 were of equal seriousness and result in the same offense level, the Court based its computation on Count 2.  Similarly, Count 2 was grouped with Counts 3 and 4 pursuant to U.S.S.G. § 3D1.2(d).  The base offense level for Counts 1-4 was then determined by finding the aggregate quantity of narcotics as directed by U.S.S.G. § 3D1.3(b).  Counts 5 and 6 involved separate incidents and could not be grouped with the first four counts.

In accord with the Drug Equivalency Table from U.S.S.G. § 2D1.1, the drug quantities for Counts 1-4 were converted to marijuana as follows: 111.611 grams of methamphetamine is equivalent to 223.22 kilograms of marijuana; 659.245 grams of "ice" is equivalent to 6,592.45 kilograms of marijuana; 53.913 grams of cocaine is equivalent to 10.78 kilograms of marijuana; and 8.604 grams of cocaine base is equivalent to 172.08 grams of marijuana.  The combined total of the narcotics seized from Hirano's hotel room equaled 6,998.53 kilograms of marijuana. U.S.S.G. § 2D1.1 outlines the appropriate base offense level for drug violations of 21 U.S.C. § 841(a)(1).  The Drug Quantity Table at U.S.S.G. § 2D1.1(c)(3) indicates that the base offense level for possessing with the intent to distribute 6,998.53 kilograms of marijuana is 34.

Count 5, the simple possession of methamphetamine, merited a base offense level 6 pursuant to U.S.S.G. §

2D2.1(a)(2).  Count 6, a felon's possession of ammunition in
violation of 18 U.S.C. §§ 922(g) and 924(e), is governed by
U.S.S.G. § 2K2.1(a)(2).  Base offense level 24 is applied to
Hirano for Count 6 because he had at least two prior felony
convictions of crimes of violence.  Pursuant to U.S.S.G. § 3D1.4,
the combined adjusted offense level for all of the counts was 34.

        The Court then enhanced Hirano's offense level from 34
to 37 because he is a "career offender" within the meaning of
U.S.S.G. § 4B1.1, and Counts 1 and 2 carried a maximum statutory
sentence of life in prison.  Hirano is a "career offender"
because he was at least 18 years old at the time of the instant
controlled substance offense, and he had at least two prior
felony convictions for "crimes of violence."  A career offender's
criminal history category is automatically raised to category VI.
The Court also concluded that Hirano is an "armed career
criminal" pursuant to U.S.S.G. § 4B1.4(a) as he violated 18
U.S.C. § 924(e), but no additional enhancement applied based on
this conclusion.

        Finally, the Court adjusted Hirano's sentence downward
based on acceptance of responsibility.  Pursuant to U.S.S.G. §
3E1.1(a), the Court reduced the base offense level from 37 to 35
because Hirano accepted personal responsibility for his criminal
conduct.  The level was further reduced from 35 to 34, under
U.S.S.G. § 3E1.1(b), because Hirano assisted the authorities in

their investigation and notified the government of his intent to plead guilty before it had to prepare for trial.  Hirano's final offense level was calculated to be 34, with a criminal history category VI.

The Sentencing Table, available in the United States Sentencing Guidelines Chapter 5, Part A reveals that the appropriate sentence for an offender at offense level 34 with a category VI criminal history is 262-327 months.  The Court sentenced Hirano to 262 months, the minimum sentence permissible under the Guidelines that were in effect in September 1999.

## STANDARD

Pursuant to Section 2255, a court must vacate and set aside a judgment and discharge the prisoner, or resentence the prisoner, or grant a new trial, or correct the sentence, if the court finds any one of the following: the judgment was rendered without jurisdiction; the sentence imposed was not authorized by law or otherwise open to collateral attack; or there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack.  28 U.S.C. § 2255.

A court shall hold an evidentiary hearing on a motion under Section 2255 "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  "A court may entertain and determine

such [a] motion without requiring the production of the prisoner
at the hearing." Id.

> The standard essentially is whether the
> movant has made specific factual allegations
> that, if true, state a claim on which relief
> could be granted.  A hearing must be granted
> unless the movant's allegations, when viewed
> against the record, do not state a claim for
> relief or are so palpably incredible or
> patently frivolous as to warrant summary
> dismissal.

United States v. Schaflander, 743 F.2d 714, 717 (9th Cir. 1984)

(citations omitted); Shah v. United States, 878 F.2d 1156, 1158

(9th Cir. 1989); see also United States v. Quan, 789 F.2d 711,

715 (9th Cir. 1986) ("Where a prisoner's motion presents no more

than conclusory allegations, unsupported by facts and refuted by

the record, an evidentiary hearing is not required."); see also

Local Rule 7.2(d) ("The court, in its discretion, may decide any

motion without a hearing.").

The Ninth Circuit recognizes that even when credibility

is at issue, no evidentiary hearing is required if it can be

"conclusively decided on the basis of documentary testimony and

evidence in the record." Shah, 878 F.2d at 1159 (quoting United

States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1989)).  In

addition, judges may use discovery, documentary evidence, and

their own notes and recollections of the plea hearing and

sentencing process to supplement the record. Shah, 878 F.2d at

1159.  "Judges may also use common sense." Id.  The choice of

9

method for handling a Section 2255 motion is left to the discretion of the district court.  See id. (citing Watts v. United States, 841 F.2d 275, 277 (9th Cir. 1988)).

As discussed below, the Court finds that Hirano's arguments lack merit.  Because the record conclusively shows that Hirano is not entitled to relief, a hearing is not warranted in this case.

## DISCUSSION

Petitioner believes that he was improperly sentenced based on the holdings in three recent United States Supreme Court cases: Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005); United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005); and Dodd v. United States, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005).  The Court first considers the timeliness of the petition and then addresses the substance of Petitioner's claims.

## I.   The Statute of Limitations Has Expired

A motion to attack a sentence under Section 2255 has a one-year period of limitation.  See 28 U.S.C. § 2255 ¶ 6.  The one-year limitation period runs from the latest of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made

retroactively applicable to cases on collateral review;
or
(4) the date on which the facts supporting the claim or
claims presented could have been discovered through the
exercise of due diligence.

28 U.S.C. § 2255 ¶ 6(1)-(4).

The § 2255 ¶ 6(1) statute of limitations period runs
from the date the judgment became final.  Hirano was sentenced on
February 24, 2003 and he filed no appeal.  A case becomes final
when the availability of appeal is exhausted.  United States  v.
LaFromboise, 427 F.3d 680, 683 (9th Cir. 2005).  Petitioner filed
no appeal and his right to appeal was exhausted 10 days later on
March 6, 2003.  Fed. R. App. P. 4(b)(1)(A).  Thus, the § 2255 ¶
6(1) limitation period ended one year later, on March 6, 2004.
Hirano did not meet this deadline, as he did not file this
petition until January 10, 2006.  Petitioner offers no argument
that the limitation periods defined by Section 2255 ¶ 6(2) or
Section 2255 ¶ 6(4) apply here.

However, Petitioner argues that his motion is timely,
pursuant to § 2255 ¶ 6(3), because it was filed within one year
of the Supreme Court's decisions in Shepard and Booker.  Hirano
is hopeful that the Supreme Court will conclude that the newly
recognized rights in Shepard and Booker are retroactively
applicable.  (Motion at 3).

In Dodd, the Supreme Court ruled that the § 2255 ¶ 6(3)
time period begins to run when the new right is recognized.  125

11

S. Ct. at 2482-83.  The court made it clear that the statute of
limitations does not run from the time when the new right is held
retroactively applicable, should such a determination
subsequently be made.  Id.  The court based its decision on the
plain language of the statute, despite its acknowledgment that
new rights are rarely held retroactively applicable within one
year of being recognized.  Id. at 2483.  As a result, Petitioner
is entitled to apply the statute of limitations provision of §
2255 ¶ 6(3) only if Booker or Shepard was made retroactively
applicable within one year of the final judgment date in the
respective cases, and he filed his claim within that one-year
period.

A.    Booker

        At the outset it is important to note that the final
judgment in Booker was entered on January 12, 2005, well after
the judgment was final in this case.  Therefore, Petitioner can
only rely on the findings in Booker if it is retroactively
applicable to cases on collateral review.  However, Booker does
not apply retroactively to cases on collateral review.

        The Ninth Circuit Court of Appeals recently examined
whether the holdings in Booker were to be applied retroactively
in U.S. v. Cruz, 423 F.3d 1119, 1120-21 (9th Cir. 2005).
Applying the framework outlined in Teague v. Lane, 489 U.S. 288
(1989), the court held that Booker does not apply retroactively

12

to petitions brought under 28 U.S.C. § 2255.  The <u>Cruz</u> court
found that "a new rule of constitutional law generally does not
apply to convictions that have become final, unless it falls
under certain exceptions." <u>Cruz</u> at 1120.  The court held that
"[i]n order to have a retroactive effect, new rules either must
be substantive or, if procedural, they must be 'watershed rules
of criminal procedure implicating the fundamental fairness and
accuracy of the criminal proceeding.'" <u>Id.</u> (<u>citing</u> <u>Schriro v.
Summerlin</u>, 542 U.S. 348, 353 (2004)).

The court found that "the <u>Booker</u> rule fits squarely
within the [] holding that a 'change in the law requiring that
juries, rather than judges, make the factual findings on which a
sentence is based [does] not announce a watershed rule of
criminal procedure.'" <u>Cruz</u>, 423 F.3d at 1120-21 (<u>citing</u> <u>Schardt
v. Payne</u>, 414 F.3d 1025, 1036 (9th Cir. 2005)).  The Ninth
Circuit concluded that "<u>Booker</u> is not retroactive, and does not
apply to cases on collateral review where the conviction was
final as of the date of <u>Booker's</u> publication." <u>Cruz</u>, 423 F.3d at
1121.

The result of this holding is that Petitioner cannot
rely on the rights recognized in <u>Booker</u> to support his motion to
attack his sentence.  It has also been more than one year since
<u>Booker</u> was determined, effectively foreclosing any argument that
the statute of limitations period for a § 2255 motion should run

13

from the Booker judgment date.

B.    Shepard

        The judgment in Shepard was entered on March 7, 2005.
As with Booker, the recognition of a new right in Shepard
occurred well after the final judgment in this case.  Thus,
Hirano cannot rely on the newly recognized right in his petition
unless Shepard is retroactively applicable.  Neither the United
State Supreme Court nor the Ninth Circuit has addressed whether
the new right recognized in Shepard is retroactively applicable
to cases on collateral review.  Courts that have addressed the
issue concluded that Shepard is not retroactively applicable.
See Caballero-Banda v. United States, 2005 WL 2240226 at *5 (W.D.
Tex. 2005) (holding the Shepard rule does not "seriously diminish
the likelihood of an accurate conviction and therefore does not
apply retroactively"); Langley v. United States, 2005 WL 1114710
at *1 (M.D.N.C. 2005) (holding that Shepard is not a watershed
change in criminal procedure); United States v. Lastrapes, 2005
WL 3241976 at *1 (W.D. La. 2005).

        As Shepard has not been held retroactively applicable
by the Supreme Court or the Ninth Circuit, Petitioner may not
rely on that right in challenging his sentence.  In addition, as
will be subsequently discussed, the Court finds that the right
recognized in Shepard would not have altered Petitioner's
sentence.  See discussion infra Part II.A.  Finally, the fact

14

that Shepard has not been held retroactively applicable within
one year of its determination defeats Petitioner's argument that
the statute of limitations period for his § 2255 motion should
run from the Shepard judgment date.

C.   Dodd

       In the alternative, Petitioner argues that he may
preserve his Booker and Shepard rights because he filed his
petition within one year of the dates on which Booker and Shepard
were decided.  He believes that this petition protects his rights
in the unlikely event that the cases are subsequently determined
to be retroactively applicable.  It is clear from the holding in
Dodd that an individual may not preserve his rights in this way.
See United States v. Gann, 159 Fed. Appx. 57, 60 (10th Cir. 2006)
(denying petitioner's attempt to preserve his rights under
Booker); Clark v. United States, 2006 WL 562135 at *2 (D. Idaho
2006); United States v. Clark, 2006 WL 118315 at *1 (M.D. Pa.
2006); Carter v. United States, 2006 WL 208855 at *2 (C.D. Ill.
2006); United States v. Darity, 2006 WL 462073 at *1 (W.D.N.C.
2006); United States v. Auman, 2006 WL 572191 at *3 (W.D. Pa.
2006); United States v. Hudson, 2006 WL 680813 at *3 (N.D. Fla.
2006); United States v. Taylor, 2006 WL 721490 at *1 (W.D. Tenn.
2006).[2]  In analyzing § 2255 ¶ 6(3), the Supreme Court stated

---

       [2]  The Court finds these unpublished decisions to be
illustrative, although it is not relying on them as precedent.

that a petitioner "may take advantage of the date in the first clause of ¶ 6(3) only if the conditions in the second clause are made." Dodd, 125 S. Ct. at 2482.  Thus, the one-year limitation period for filing a petition, as detailed in § 2255 ¶ 6(3), applies *only if* the right is newly recognized and "made retroactively applicable to cases on collateral review" within one year.  28 U.S.C. § 2255 ¶ 6(3).  The court recognized that its interpretation of the statute could lead to the "potential for harsh results," but was bound by the plain statutory language.  Dodd, 125 S. Ct. at 2483.  As previously discussed, neither Shepard nor Booker were held to be retroactively applicable within one year of the entry of judgment, thus the right to collateral review based on those cases may not be preserved.

Accordingly, the Court concludes that, in Hirano's case, the one-year period of limitation for his § 2255 petitions ran from the date on which the judgment of conviction became final in accordance with 28 U.S.C. § 2255 ¶ 6(1).  Petitioner filed his § 2255 Motion more than one year after his judgment of conviction became final.  Therefore, the Court denies as untimely all claims made in Petitioner's Section 2255 Motion.  However, the Court will also examine alternative reasons for denial of Petitioner's motion.

II.  **Petitioner's Substantive Claims**

A.   The Court Appropriately Considered Evidence of Petitioner's
     Prior Convictions

          Petitioner Hirano challenges the consideration of his

prior convictions and evidence from police reports in the

determination of his sentence.  Evidence of his prior convictions

were relevant at sentencing in two ways.  First, the Court

considered Hirano's prior burglary convictions to determine that

he was a "career offender" pursuant to U.S.S.G. § 4B1.1.  Under

U.S.S.G. § 4B1.1(a), a person is a "career offender" if they had

two prior felony convictions for "crimes of violence."  A "crime

of violence" is:

> any offense under federal or state law, punishable by
> imprisonment for a term exceeding one year, that –
>
>> (1) has as an element the use, or attempted use,
>> or threatened use of physical force against the
>> person of another, or
>>
>> (2) is burglary of a dwelling, arson, or
>> extortion, involves use of explosives, or
>> otherwise involves conduct that presents a serious
>> potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a).

          Second, based on prior convictions, the Court concluded

that Hirano was an "armed career criminal" who violated 18 U.S.C.

924(e) ("Armed Career Criminal Act" or "ACCA").  Hirano was

indicted pursuant to 18 U.S.C. § 922(g), which bars persons who

have been convicted of felonies from possessing ammunition that

was shipped or transported in interstate or foreign commerce.

Any person who violates this Act, who has three previous convictions for violent felonies, shall be sentenced to a term of imprisonment of not less than 15 years.  18 U.S.C. § 924(e).  For purposes of 18 U.S.C. § 924(e), a "generic burglary" is an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," which constitutes a violent felony.  Shepard, 125 S. Ct. at 1257.  In addition, any previous conviction that "has as an element the use, attempted use, or threatened use of physical force against the person of another" also constitutes a violent felony.  18 U.S.C. § 924(e)(2)(B)(i).

As Petitioner admitted at his April 26, 2001 Change of Plea hearing before this Court, he was convicted of first degree burglary under Hawaii state law on three separate occasions prior to his arrest for Counts 1-6 in the Indictment.  Pursuant to H.R.S. 708-810:

> (1) A person commits the offense of burglary in the first degree if the person intentionally enters or remains unlawfully in a building, with intent to commit therein a crime against a person or against property rights, and:
>
>> (a) The person is armed with a dangerous instrument in the course of committing the offense; or
>>
>> (b) The person intentionally, knowingly, or recklessly inflicts or attempts to inflict bodily injury on anyone in the course of committing the offense; or
>>
>> (c) The person recklessly disregards a risk that

18

the building is the dwelling of another, and the building is such a dwelling.

The Supreme Court has held that a sentencing court may consider the "statutory definition, charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" to determine the character of a previous burglary. Shepard, 125 S. Ct. at 1257; see also Taylor v. United States, 495 U.S. 575, 110 S. Ct. 2143 (1990). However, a court may not consider police reports or complaint applications to determine whether a previous burglary satisfied the "generic burglary" or "crime of violence" elements. Id. Based on this ruling, Petitioner asserts that the Court erred when it considered the Presentence Investigation Report, which contained evidence from police reports with details regarding his prior convictions.

However, the rule expressed in Shepard, which as previously discussed has not been held retroactively applicable to matters on collateral review, does not upset Petitioner's sentence. In Shepard, the defendant ("Shepard") had been previously convicted on four occasions under Massachusetts's burglary statutes. 125 S. Ct. at 1257. The Government sought to sentence Shepard under the ACCA. Id. Due to the breadth of Massachusetts's burglary statutes, which covered incidents of breaking and entering into vessels, ships, or vehicles, it was not possible to definitively determine based on the elements of

19

the previous convictions that Shepard's convictions were "generic burglaries" that would invoke the ACCA.  Id.; see Mass. Gen. Laws Ann., ch. 266, § 16 (2000).  While evidence from police reports made it clear that Shepard's burglary convictions were for breaking and entering into buildings, the Supreme Court concluded that the sentencing court could not consider that evidence.

In evaluating the U.S.S.G.'s "career offender" requirements, courts relying on the Hawaii burglary statute do not face the same concerns because the statute is not so broad. A person may only be convicted of first degree burglary in Hawaii if he entered a building and 1) he was armed; or 2) he used or attempted to use physical force; or 3) the building was a dwelling.  See H.R.S. 708-810.  Each of the three independent elements that give rise to first degree burglary in Hawaii constitute "crimes of violence" under U.S.S.G. § 4B1.2(a).

If Hirano had committed the burglaries while armed as outlined in H.R.S. § 708-810(1)(a), then his conduct "present[ed] a serious potential risk of physical injury to another," which U.S.S.G. 4B1.2(a)(2) defines as a "crime of violence."  Next, H.R.S. 708-810(1)(b) closely parallels U.S.S.G. § 4B1.2(a)(1) regarding the use of force against another person.  Thus, if Hirano's burglary convictions were based on the use or threat of physical harm then he committed "crimes of violence."  Finally, H.R.S. 708-810(1)(c) requires the breaking and entering into a

dwelling, which is specifically defined in U.S.S.G. 4B1.2(a)(2) as a "crime of violence."  In conclusion, based solely on the elements of Hawaii's first degree burglary statute, it is clear that Hirano's prior convictions were "crimes of violence" as defined by the United States Sentencing Guidelines, and he was properly designated as a "career offender."

For the purposes of the ACCA, as long as the burglary occurred in a building, then the act is sufficient to constitute a "generic burglary," which constitutes a violent felony and invokes the penalties for an "armed career criminal."  H.R.S. § 708-810(a) requires that the person break and enter into a building. Again, based simply on the elements of Hawaii's first degree burglary statute, the Court can conclude that Hirano's prior convictions were for "generic burglaries."

Ultimately, the dispositive question in Shepard was "whether a sentencing court [could] look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary." Shepard, 125 S. Ct. at 1257.  There was no need for this Court to look at police reports to determine that Hirano had committed "generic burglaries" or "crimes of violence."  As the Ninth Circuit recently stated "[t]erms like 'violent felony' and 'crime of violence' are defined by statute

21

and according to certain enumerated elements." <u>United States v.</u> <u>Kortgaard</u>, 425 F.3d 602, 607 (2005).  Therefore, while the Court acknowledges evidence from police reports was included in the Presentence Investigation Report, the Court only needed to rely on the properly admitted statutory definitions of Hirano's prior convictions to calculate his sentence.  As such, the Court's sentence complies with the general rights of defendants that were identified by the Supreme Court in <u>Shepard</u>.

B.   <u>Petitioner's Offense Level Was Properly Determined</u>

Petitioner further contends that his sentence was improper because the Court made findings of fact regarding the quantity of narcotics discovered in his hotel room.  Petitioner concedes that he pled guilty to all six Counts of the Indictment, but believes that his base offense level should have been calculated based on the minimum quantity of drugs outlined in each count.  For example, Count 2 of the Indictment states that Hirano possessed with the intent to distribute fifty or more grams of "pure" methamphetamine.  However, for the purposes of sentencing, the Court actually concluded that Hirano possessed with the intent to distribute 111 grams of methamphetamine and 659 grams of "ice."  Petitioner believes that he only pled guilty to counts with an aggregate adjusted drug quantity of only 300 kilograms of marijuana, not the nearly 7,000 kilograms the Court

acknowledged.  As a result, he argues that his base offense level
should have been 26, not 34.

Petitioner relies on Apprendi v. New Jersey, 530 U.S.
466 (2000), and Booker, 543 U.S. 220, to support his petition for
reconsideration of the offense level that controlled the duration
of his sentence.  The Court first reiterates that the Supreme
Court's holdings in Booker, 543 U.S. at 245, are not
retroactively applicable to cases on collateral review.  Cruz,
423 F.3d at 1121.  Furthermore, Petitioner really only relies on
Booker to emphasize that judge found facts established by the
preponderance of the evidence are inappropriately considered at
sentencing in accord with Apprendi.  543 U.S. at 223.

In Apprendi, the United States Supreme Court held that
"[o]ther than the fact of a prior conviction, any fact that
increases the penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury, and proved beyond a
reasonable doubt."  Apprendi v. New Jersey, 530 U.S. at 490;
Blakely v. Washington, 542 U.S. 296, 303 (2004) ("the 'statutory
maximum' for Apprendi purposes is the maximum sentence a judge
may impose solely on the basis of the facts reflected in the jury
verdict or admitted by the defendant.").  Apprendi limits the
facts upon which a sentencing court may rely, "but Apprendi does
not alter the authority of the judge to sentence within the

23

statutory range provided by Congress." <u>United States v. Toliver</u>, 351 F.3d 423, 432 (9th Cir. 2003).

Petitioner pled guilty to Counts 1-6 of the Indictment. In doing so, he admitted that he manufactured and possessed with the intent to distribute fifty or more grams of "pure" methamphetamine. <u>See</u> Respondent's Opposition, Ex. 3 (Change of Plea Hearing Transcript) at 27:24-28:9; Hirano Indictment, Count 1 and Count 2. Based solely on this admission, 21 U.S.C. § 841(b)(1)(A)(viii) authorizes a sentence of 10 years or more to life. As the Ninth Circuit concluded, <u>Apprendi</u> is only violated by a Court's quantity determination if it exposes the defendant to a sentence longer than the statutory maximum. <u>Toliver</u>, 351 F.3d at 432. Here, the Court sentenced Hirano to the lowest end of the guideline range, 262 months, which safely falls within the statutory range of 10 years to life authorized by the statute.

Furthermore, even if Petitioner is correct that the Court ought to have based the drug quantity determination solely on the minimum drug quantities specified in the Indictment, the resulting sentence under the Guidelines would be the same. The career offender enhancement under U.S.S.G. § 4B1.1 does not add steps to the base offense level, rather it sets a specific offense level depending on the underlying offense's statutory maximum penalty. The statutory maximum penalty for violations of

24

21 U.S.C. § 841(b)(1)(A)(viii) is life.  According to the career offender enhancement table, 37 is the minimum applicable offense level for a career offender convicted of offenses with such a penalty.  All career offender's are placed in criminal history category VI.  Thus, in Hirano's case, where the career offender enhancement applied, the base offense level determined by aggregating the drug quantities did not even factor into the final sentence determination.

It is well settled that a sentencing court may consider prior convictions.  Apprendi, 530 U.S. at 490; Blakely, 542 U.S. at 301; Booker, 125 S. Ct. at 756; United States v. Kortgaard, 425 F.3d 602, 606 (9th Cir. 2005).  The Court properly concluded that Hirano's prior convictions qualified him as a "career offender" under U.S.S.G. § 4B1.1 because he was 18 at the time he committed the instant controlled substance offense, and he had at least two prior felony convictions for "crimes of violence."  See discussion supra Part II.A.  The Court concludes that Petitioner received an appropriate sentence in accordance with the United States Sentencing Guidelines that were in effect at the time he committed the offenses to which he pled guilty.

## CONCLUSION

The Court concludes that Petitioner's Motion to Vacate, Set Aside, or Correct His Sentence is barred by the statute of

limitations as outlined by 28 U.S.C. § 2255 ¶ 6.  Furthermore,
Petitioner's request for reconsideration based on rights
recognized by the Supreme Court in <u>Booker</u> and <u>Shepard</u> is denied
because those rights are not retroactively applicable to cases on
collateral review.  Even if the Court were to consider
Petitioner's substantive arguments, the Court holds that
considering his prior convictions was appropriate; the elements
of the burglary convictions were sufficient to support a finding
that Hirano was a "career offender" and an "armed career
criminal"; the Court did not have to consider evidence from
police reports to make determinations about Petitioner's
sentence; and the appropriate offense level was applied by the
Court.  For the foregoing reasons, the Court DENIES Petitioner's
Motion.

IT IS SO ORDERED.

DATED: HONOLULU, HAWAII, May 12, 2006.


_____
Alan C. Kay
Sr. United States District Judge


HIRANO V. UNITED STATES, CIV. NO. 06-00010 ACK/BMK; CRIM. NO. 99-00465 ACK,
ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE